UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL LLORENS,<br>   Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:21-cv-1096 (SVN) |
| | : |
| DETECTIVE MICHAEL E. SLAVIN, ET AL.,<br>   Defendants. | :<br>: |

## **INITIAL REVIEW ORDER**

Plaintiff Michael Llorens is incarcerated at Brooklyn Correctional Institution in Brooklyn, Connecticut. He has filed a civil rights complaint against the defendants, Detectives Michael C. Slavin, Matthew Mroczko, Ryan T. Coleman, and Ratajczack, and Sergeant Donald C. Anderson. His claims arise from an incident that occurred on February 15, 2019, in New Britain, Connecticut during which Defendants used force against him. For the reasons set forth below, the Court will dismiss the Fourth and Fourteenth Amendment claims asserted against Defendants in their official capacities and the Fourteenth Amendment claim asserted against Defendants in their individual capacities. The following claims will proceed: the Fourth Amendment claim that all Defendants, in their individual capacities, illegally detained, seized or falsely arrested Plaintiff; the Fourth Amendment claim that Detectives Slavin and Mroczko, in their individual capacities, engaged in excessive force against Plaintiff; and the Fourth Amendment claim that Detectives Coleman and Ratajczack and Sergeant Anderson, in their individual capacities, failed to intervene in the use of force by Detectives Slavin and Mroczko.

I. **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]' devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal quotation marks omitted).

It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of

solitude for *pro se* litigants). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.     FACTS

The Complaint sets forth the following alleged facts, which are accepted as true for purposes of this initial review.

On February 15, 2019, Plaintiff was walking on Wilcox Street in New Britain, Connecticut. ECF No. 1 at 5 ¶ 1. At approximately 4:00 or 4:30 p.m., an undercover police vehicle pulled up beside Plaintiff, and officers in the vehicle instructed him to stop walking. *Id.* ¶ 2. Plaintiff stopped, got down on his knees, and put up his hands. *Id.* Detective Slavin exited the vehicle and kicked Plaintiff in the back, causing Plaintiff to fall forward onto the pavement. *Id.* ¶¶ 2-3. Detective Slavin then got on top of Plaintiff's back and began to strike Plaintiff with "elbow shots on the back of [his] head" multiple times. *Id.* ¶¶ 3-4. Detective Slavin also smashed Plaintiff's face on the pavement several times and used a series of fist strikes on Plaintiff's face and ribs, causing two of Plaintiff's ribs to fracture. *Id.* at 6 ¶ 5. Someone at the scene placed Plaintiff in handcuffs as he lay bleeding on the pavement. *Id.* ¶ 6. Detective Mroczko then punched Plaintiff's nose, eyes, ears, and back of his head several times. *Id.* ¶ 6.

Plaintiff further alleges Detectives Coleman and Ratajczack and Sergeant Anderson were present at the scene and made jokes and racial comments. *Id.* ¶¶ 8-9. They told Plaintiff "to go back to [the] Island that [he] came from and call[ed] [him] a Spic." *Id.* ¶ 9. One of the detectives requested that emergency medical technicians come to the scene to examine Plaintiff. *Id.* ¶ 10. A medical technician briefly assessed Plaintiff and indicated that he was "fine." *Id.*

Defendants transported Plaintiff to the New Britain Police Department. *Id.* at 7. After he arrived at the police station, Plaintiff coughed "up blood." *Id.* An officer provided Plaintiff with a trash can so that he would not get blood on the floor. *Id.* After processing Plaintiff, an officer placed him in a holding cell for more than two hours. *Id.* When officers noticed that Plaintiff was still coughing up blood and was experiencing pain, they transported him to the emergency room at New Britain Hospital. *Id.* After waiting four to six hours in a treatment room, a nurse provided Plaintiff with "painkillers" and informed him that he could go home. *Id.*

Three to four weeks later, Plaintiff was experiencing pain when he breathed and was also coughing up blood. *Id.* Plaintiff sought treatment at the University of Connecticut Health Center. *Id.* A physician assessed Plaintiff and informed him that he had suffered two broken ribs. *Id.*

Since the February 2019 incident, Plaintiff's sight in his right eye has deteriorated, he sees spots and his vision is blurry, he suffers from migraine headaches on a weekly basis and ringing in his ears and back pain on a continuous basis, and he has experienced nightmares and increased anxiety. *Id.*

## III. DISCUSSION

Plaintiff does not articulate the specific claims that he seeks to raise against Defendants. The Court liberally construes the allegations to state Fourth Amendment false arrest, excessive force, and failure to intervene claims and a Fourteenth Amendment equal protection claim. For relief, Plaintiff requests monetary damages.

### A. Fourth Amendment – Excessive Force

In determining whether a law enforcement official has used excessive force in violation of the Fourth Amendment in connection with an arrest, the Court is required to pay "careful attention

4

to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  This objective test is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so.  *See Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (summary order) ("It is axiomatic that claims under § 1983 for use of excessive force or failure to intervene require personal involvement to trigger liability.") (citing *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004)); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (A police officer has an affirmative duty to intercede when excessive force is being used by other officers if there is "a realistic opportunity to intervene to prevent the harm from occurring.").

Plaintiff alleges that he was walking down the street in New Britain, Connecticut at 4:00 p.m. when the defendants pulled up in an unmarked car and directed him to stop.  According to Plaintiff, he complied with this order and got down on his knees and raised his hands in the air.  Even though he did not try to leave the scene or resist in any way, Plaintiff alleges that Detectives Slavin and Mroczko punched and kicked him as he lay on the ground.  Plaintiff has asserted sufficient facts from which an inference could be drawn that the force used by Detectives Slavin and Mroczko, after he complied with their orders to stop and did not attempt to evade arrest or engage in disruptive or dangerous behavior, was objectively unreasonable.  Accordingly, the Court

will permit this Fourth Amendment excessive force claim to proceed against Detectives Slavin and Mroczko in their individual capacities.

Although Plaintiff does not allege that Detective Coleman, Detective Ratajczack, or Sergeant Anderson were directly involved in the use of force, he suggests that they were present when Detectives Slavin and Mroczko assaulted him. The Court liberally construes these allegations to state a claim that Detectives Coleman and Ratajczack and Sergeant Anderson failed to intervene to prevent Slavin and Mroczko from assaulting Plaintiff. All law enforcement officials "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted). The Court will permit this failure to intervene excessive force claim to proceed against Detectives Coleman and Ratajczack and Sergeant Anderson in their individual capacities for further development of the factual record.

### B.     Fourth Amendment – Detention/Arrest

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is "reasonableness." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (internal quotation marks and citation omitted).

An arrest constitutes a seizure under the Fourth Amendment and is not reasonable unless

it is based on probable cause to believe that the individual has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). The Fourth Amendment permits an officer to arrest an individual without a warrant when the "officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

Plaintiff alleges that Defendants stopped him as he was walking down a street in New Britain. At this stage, there are no facts to suggest that Plaintiff was engaged in illegal activity or that Defendants had previously obtained a warrant for Plaintiff's arrest. Nor did Plaintiff attempt to flee the scene when Defendants pulled up beside him, according to the Complaint. Drawing all inferences in Plaintiff's favor, these allegations do not suggest that Defendants could have reasonably believed that they had probable cause to detain or arrest Plaintiff. The Fourth

Amendment illegal seizure/false arrest claim thus will proceed as to all Defendants.[1]

  **C.**  **Fourteenth Amendment – Equal Protection**

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985) (citation omitted).

A plaintiff may state a claim of intentional discrimination in violation of the Equal Protection Clause by identifying: (1) "a law or policy that expressly classifies persons on the basis of race[;]" (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner[;]" or (3) "a facially neutral statute or policy [that] has an adverse effect

---

[1] The Court observes that the State of Connecticut Judicial Branch website reflects that New Britain Police Officers arrested Plaintiff on February 15, 2019, on the charge of interfering with an officer and resisting arrest in violation of Connecticut General Statutes § 53a-167 and that on January 3, 2020, he either pleaded guilty or a jury or judge found him guilty of that criminal charge. On March 6, 2020, a judge sentenced him to one year of imprisonment. Information regarding this arrest, charge, conviction, and sentence may be found at: http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Pending Case – By Docket Number using Case Number H15N-CR19-0320244-S (last visited December 9, 2021). Generally, favorable termination of a criminal proceeding is an element of a Section 1983 claim sounding in false arrest. *Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cir. 1992). The Court makes no determination at this time regarding whether Plaintiff's conviction of at least one of the criminal charges for which Plaintiff was arrested on February 15, 2019, or the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), might preclude Plaintiff's Fourth Amendment false arrest/illegal detention claim. *See Heck*, 512 U.S. at 487 ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."); *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (holding that district court did not err in granting summary judgment on false arrest claims because "the Court [has] expressly held, invoking Connecticut law, that favorable termination is an element of 'a section 1983 claim sounding in false imprisonment or false arrest'") (citing *Roesch*, 980 F.2d at 853-54).

and . . . was motivated by discriminatory animus." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotation marks and citations omitted), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).  Plaintiff has pleaded no facts concerning an allegedly discriminatory law or policy.

A plaintiff may also plead an equal protection violation, however, under a selective enforcement theory.  To state a selective enforcement claim, a plaintiff must allege: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of [the plaintiff's] constitutional rights, or malicious or bad faith intent to injure [that] person."  *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted).

Plaintiff contends that Defendants stopped him, used excessive force against him, took him into custody, and detained him at the New Britain Police Department for several hours for no apparent reason other than his race.  In support of this contention, Plaintiff states that during or shortly after Detectives Slavin and Mroczko used excessive force against him, Detectives Coleman and Ratajczack and Sergeant Anderson suggested that he return to "the Island" that he came from and referred to him as a "Spic." Although these comments may have been abhorrent, district courts in the Second Circuit "'have found that [t]he use of racial slurs, alone, fail to state a claim for a violation of the equal protection clause of the Fourteenth Amendment.'"  *Williams v. Toto*, No. 20-CV-4593 (PKC) (VMS), 2021 WL 2351176, at *11 n.21 (E.D.N.Y. June 9, 2021) (quoting *Greene v. City of New York*, No. 08-cv-00243 (AMD) (CLP), 2017 WL 1030707, at *29–30 (E.D.N.Y. Mar. 15, 2017) (collecting cases), *aff'd*, 742 F. App'x 532 (2d Cir. 2018)).

9

Furthermore, Plaintiff does not allege that similarly situated individuals who were of another race or ethnicity were treated differently, which would be required in order to state a selective enforcement claim. As such, the allegation that Plaintiff was stopped, beaten, and taken into custody because he is Black does not state a violation of the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the Fourteenth Amendment equal protection claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D.     **Fourth and Fourteenth Amendment Claims – Official Capacities**

Plaintiff does not indicate the capacity or capacities in which he sues Defendants. To the extent that he also seeks relief from Defendants in their official capacities for violations of his federal constitutional rights, those claims are dismissed.

"A claim against a municipal officer in his official capacity is, in essence, a claim against the city." *Mayo v. Doe*, 480 F. Supp. 3d 395, 402 (D. Conn. 2020); *see also Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (noting that suit against municipal official in his official capacity was a suit against the municipality because liability for any judgment would rest with the municipality). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under § 1983 based on the actions of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects the notion that "a municipality cannot be made liable under § 1983 for acts of its

10

employees by application of the doctrine of *respondeat superior*." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (internal quotation marks omitted).

Plaintiff has asserted no facts to suggest that on February 15, 2019, Detectives Slavin, Mroczko, Coleman, and Ratajczack and Sergeant Anderson acted pursuant to an unconstitutional policy or custom of the City of New Britain. Rather, Plaintiff describes only a single incident. *See, e.g.*, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy") (citation omitted); *Gainey v. Pagel*, No. 3:21-CV-43 (SRU), 2021 WL 2400256, at *6 (D. Conn. June 11, 2021) (dismissing official capacity claims against Waterbury police officers because plaintiff "does not set forth any facts that raise a plausible inference that the police misconduct was the product of anything other than the individual actions of the officers at the scene.").

Absent allegations that the actions of Detectives Slavin, Mroczko, Coleman, and Ratajczack and Sergeant Anderson were the result of a municipal policy or custom, Plaintiff has not stated a plausible claim under *Monell* against Defendants in their official capacities. Accordingly, to the extent that Plaintiff intended to assert the Fourth and Fourteenth Amendment claims of excessive force, false arrest, and discriminatory treatment against Defendants in their official capacities, those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

11

**ORDERS**

The Court enters the following orders:

**(1)** The Fourth and Fourteenth Amendment claims asserted against Defendants in their official capacities and the Fourteenth Amendment equal protection claim asserted against Defendants in their individual capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The following claims will **PROCEED**: the Fourth Amendment claim that all Defendants, in their individual capacities, illegally detained, seized or falsely arrested Plaintiff; the Fourth Amendment claim that Detectives Slavin and Mroczko, in their individual capacities, engaged in excessive force against Plaintiff; and the Fourth Amendment claim that Detectives Coleman and Ratajczack and Sergeant Anderson, in their individual capacities, failed to intervene in the use of force by Detectives Slavin and Mroczko.

**(2)** The Clerk shall mail a copy of the complaint, this order, and a waiver of service of process request packet to each Defendant: Detective Michael C. Slavin, Detective Matthew Mroczko, Detective Ryan T. Coleman, Detective Ratajczack, and Sergeant Donald C. Anderson, in his or her individual capacity at the following address: New Britain Police Department, 10 Chestnut Street, New Britain, Connecticut 06051.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the requests.  If any Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Coleman, Ratajczack, Anderson, Slavin, and Mroczko shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the

date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order, specifically June 15, 2022. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order, specifically July 15, 2022.

**(6)** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)(2) provides that Plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

**(7)** Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Because Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court, Plaintiff must serve discovery requests on defendants' counsel by regular mail.

SO ORDERED at Hartford, Connecticut this 17th day of December, 2021.

_____/s/_____
Sarala V. Nagala
United States District Judge